UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY TETA *and* MOTTY STEIN,
*individually and on behalf of all others similarly situated*,

                    Plaintiffs,

– against –

GO NEW YORK TOURS, INC., *doing business as* TOPVIEW SIGHTSEEING AND EVENT CRUISES NYC – CITY LIGHTS CRUISE,

                    Defendants.

**OPINION & ORDER**

24 Civ. 01614 (ER)

Ramos, D.J.:

       On March 1, 2024 Cindy Teta and Motty Stein brought this action against Go New York Tours, Inc. d/b/a Topview Sightseeing ("Go New York") for violation of New York Arts & Cultural Affairs Law § 25.07.  Before the Court is Go New York's motion to compel arbitration and dismiss the instant action.  Doc. 10.  For the reasons set forth below, the motion to compel arbitration is GRANTED.  If either party wishes for this action to be stayed rather than dismissed, that party shall inform the Court no later than July 15, 2024.

**I.**    **BACKGROUND**

       Go New York is a tour company that is incorporated in New York and maintains its principal place of business in New York, New York.  ¶ 10.[1]  Go New York sells, among other things, cruise tickets from its website.  ¶¶ 1–2.

       When purchasing tickets from Go New York, purchasers agree to the terms and conditions of the website via a clickbox.  Doc 11-1 ¶ 4.  The clickbox, based on the image provided by Plaintiffs' complaint, is next to a legible line of text which reads "I have read

---

[1] Unless otherwise noted, citations to "¶ __" refer to the complaint, Doc. 1.

and agree to eventcruisenyc.com terms and conditions," with "terms and conditions" in light blue text. ¶ 22.  Customers must agree to the terms and conditions in order to purchase tickets.  Doc 11-1 ¶ 4.  A screenshot of how the clickbox and agreement appeared to purchasers is included in the complaint and is reproduced below:



¶ 22.
The Go New York website terms and conditions note in their first paragraph that "our terms and conditions contain a mandatory arbitration provision that requires the use of arbitration on an individual basis and limits the remedies available to you in the event of certain disputes."  Doc. 11-2 at 2.  Plaintiffs do not dispute that the arbitration agreement submitted to the Court is a true and correct copy of the agreement included in the terms and conditions at the time of purchase.

The terms also include a section titled "Liability and Warranties Disclaimer" which states, among other things, as follows:

> You agree that any dispute, controversy or claim arising out of or in regards to this liability and warranties disclaimer shall be settled by binding arbitration in accordance with the laws of New York State, before a single arbitrator of the American Arbitration Association ("AAA"). The arbitration process including but not limited to payments, administration and fees will be conducted under the AAA regulations and rules.
>
> You and TopView agree that any dispute arising out of or related to these Terms and Conditions or the Services offered by TopView is personal to You and TopView and that such dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding.

Doc. 11-3 at 8.

Cindy Teta and Motty Stein purchased cruise admission tickets from Go New York's website in October 2023 and January 2024 respectively. ¶¶ 8–9. Teta and Stein both allege that when they visited the Go New York website, they first saw a price exclusive of fees, and were only presented with additional fees under the labels "Ticket and Handling," "Marine," and "Fuel" after selecting ticket options and clicking through multiple pages. *Id.*

Teta and Stein bring this action on behalf of a class for a violation of New York Arts & Cultural Affairs Law § 25.07, which provides that a "platform that facilitates the sale or resale of tickets. . . shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." ¶¶ 46–56 (citing New York Arts & Cultural Affairs Law § 25.07(4)). Plaintiffs' putative class comprises "[a]ll purchasers of tickets to City Lights Cruise from Defendant's website." ¶ 33.

On May 10, 2024, Go New York moved to compel arbitration and dismiss the instant action pursuant to the Federal Arbitration Act, 9 U.S.C. §§4 & 206. Doc. 10.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA reflects "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Memorial Hospital. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).  But parties are not required to arbitrate unless they agreed to do so.  *Id.* (citation omitted).  Thus, before an agreement to arbitrate can be enforced, the court must first determine whether such an agreement exists between the parties.  *Id.*  This question is "determined by state contract law principles."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact.  *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment.  If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary."  (internal citations omitted)).  On a motion to compel arbitration, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws "all reasonable inferences in favor of the non-moving party."  *Meyer v. Uber Technologies., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

4

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–102 (2d Cir. 2022) (citation omitted).  Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to "show[] the agreement to be inapplicable or invalid." *Harrington v. Atlantic Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citation omitted).

If the court determines that a valid arbitration agreement exists, the court must then determine whether the particular dispute falls within the scope of the agreement. *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) (citation omitted).  If the dispute falls within the scope of the arbitration agreement, the "role of the court ends and the matter is one for arbitration." *Unique Woodworking, Inc. v. N.Y.C. District Council of Carpenters' Pension Fund*, No. 07 Civ. 1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

### III. DISCUSSION

To determine whether to compel arbitration, the Court must weigh three primary considerations:  (1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration agreement; and (3) if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable. *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).  Since federal statutory claims are not at issue here, the Court examines the remaining two factors in turn.

#### A. Agreement to Arbitrate

The "crucial inquiry" under the first factor of the test is "whether the parties have agreed to submit a dispute that has arisen between them for final and binding determination by a third-party." *Seed Holdings, Inc. v. Jiffy International AS*, 5 F. Supp. 3d 565, 576–77 (S.D.N.Y. 2014).

State contract law principles govern whether an arbitration agreement exists. *Nicosia*, 834 F.3d at 229.  "To form a valid contract under New York law, there must be

5

an offer, acceptance, consideration, mutual assent and intent to be bound." *Peterson v. Regina*, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F,3d 393, 427 (2d Cir. 2004). Courts can infer acceptance when the party demonstrated at least constructive knowledge of the terms through his actions. *Saizhang Guan v. Uber Techs.*, Inc., 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) (citing *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 25 (2d Cir. 2010).

Here, Go New York's website presents a clickwrap agreement to users. A clickwrap agreement is one that "require[s] a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (quoting *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D.Cal. 2009). The Second Circuit adopted a similar definition in *Nicosia*, 834 F.3d 220 (2d Cir. 2016). *See id.* at 233 ("[A clickwrap agreement] typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use."). According to Go New York, and as shown in the picture provided by Plaintiffs' complaint, purchasers on Go New York's website were required to click a box next to a line of text stating "I have read and agree to eventcruisenyc.com terms and conditions." Doc. 11-1 ¶¶ 4–5; Doc. 1 ¶ 22.

A web user may be bound by a clickwrap arbitration agreement where they had "reasonable notice of the arbitration provision." *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019). In determining whether a user sufficiently assented to the terms of a clickwrap arbitration agreement, courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms." *Id.* at 289.

Here, the Court finds no genuine dispute that the parties are bound by the arbitration provisions of the terms and conditions. Plaintiffs were required to click on a box indicating agreement to certain terms and conditions before purchasing their tickets.

Doc. 11-1 ¶¶ 4–5.  While Plaintiffs fault Go New York for failing to provide specific evidence of their agreement to the terms, Doc. 13 at 12, Plaintiffs' insinuation that they never agreed to the terms is without factual basis.  Plaintiffs state that Go New York "does not include any evidence" that Plaintiffs clicked the box, but Plaintiffs do not dispute that they were required to click the box in order to complete the purchase.  *See Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 Civ. 10286 (LGS), 2024 WL 283474, at *4 (S.D.N.Y. Jan. 25, 2024) (citing the requirement that Plaintiffs had to click a box acknowledging agreement to arbitration in granting a motion to compel arbitration).

Moreover, Plaintiffs were on reasonable notice of the terms and conditions and the arbitration agreement therein.  Doc. 11 at 3.  The terms and conditions themselves were hyperlinked, as indicated by their blue text, directing users to their provisions.  *See Meyer*, 868 F.3d at 77–80 (noting, in granting a motion to compel arbitration, that a reasonably prudent digital user recognizes indicators of hyperlinked text and is on notice of the additional information to be found on the hyperlinked page).  The arbitration provisions within the terms were also sufficiently conspicuous given the first paragraph's indication that "our terms and conditions contain a mandatory arbitration provision that requires the use of arbitration on an individual basis and limits the remedies available to you in the event of certain disputes."  Doc. 11-2 at 2.

The Court thus finds that because Plaintiffs had a sufficient opportunity to read the agreement and assented to the agreement by affirmatively clicking on the box, the parties are bound by the agreement.  *Serrano v. Cablevision Systems Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012); *see also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (finding that almost every district court to consider the issue "has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable.").

### B. Scope of Agreement to Arbitrate

Under the second factor, the Court must examine the scope of the arbitration agreement.  While an arbitration agreement may, in some instances, delegate questions of

arbitrability to the arbitrator, *see, e.g.*, *Coinbase, Inc. v. Suski*, 602 U.S. _, _, 144 S. Ct. 1186, 1186 (2024), Defendants do not allege that their agreement does so. Thus, this Court will decide the arbitrability of the present matter.

Defendants argue that the present matter must be submitted to arbitration. Doc. 11 at 1. In response, Plaintiffs construe the agreement narrowly, arguing that it is exclusively applicable to claims arising from attendance at a Go New York tour rather than the ticket-buying process. Doc. 13 at 5.

Given the strong federal policy in favor of arbitration, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Daly*, 939 F.3d at 421 (citation and internal quotation marks omitted). Here, the arbitration agreement provides that:

> You and TopView agree that any dispute arising out of or related to these Terms and Conditions or the *Services* offered by TopView is personal to You and TopView and that such dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding.

Doc 11-3 at 8 (emphasis added).

One of the services provided by Defendants is the sale of tickets through their website. Doc. 11-1 ¶ 2. Thus, in light of the strong federal policy in favor of arbitration as a tool of dispute resolution, the arbitration agreement covers the ticket sale—with its fees—as one of Go New York's services. *See Roberts v. Petersen Investments.*, 214 F. Supp. 3d 237, 239 (S.D.N.Y. 2016) (noting that federal public policy favoring arbitration "requires [the Court] to construe arbitration clauses as broadly as possible." (alteration in original) (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d

Cir. 1995)).[2]  Accordingly, the Court finds that the ticket fee claim falls within the scope of the arbitration agreement.

### C. Potential Stay of Proceedings

Go New York asks the Court to dismiss the instant action and compel arbitration. Doc. 10.  Under 9 U.S.C. § 3, a district court must stay the judicial proceedings upon "application of one of the parties" where the asserted claims are "referable to arbitration." 9 U.S.C. § 3; *see Glikin v. Major Energy Electric Services. LLC*, No. 21-3097, 2022 WL 17366626, at *1 (2d Cir. Dec. 2, 2022) ("Section 3 of the FAA requires a district court to stay proceedings 'when all of the claims in an action have been referred to arbitration *and a stay requested*.'" (emphasis added) (quoting *Katz v. Cellco Partnership*, 794 F.3d 341, 346 (2d Cir. 2015)).  "However, when all of the claims in an action are arbitrable a Court may dismiss the action rather than stay the proceedings." *Isaacs v. OCE Business Services*, 968 F. Supp. 2d 564, 572 (S.D.N.Y. 2013) (citation omitted).  Here, neither party has requested a stay.  Accordingly, in an abundance of caution, if either party desires this case to be stayed pending arbitration, that party must inform the Court no later than July 15, 2024.  *See Daly v. Citigroup Inc.*, No. 16 Civ. 9183 (RJS), 2018 WL 741414, at *6 (S.D.N.Y. Feb. 6, 2018), *aff'd*, 939 F.3d 415 (2d Cir. 2019).

### IV. CONCLUSION

For the reasons set forth above, Go New York's motion to compel arbitration is GRANTED.  If either party wishes for this action to be stayed rather than dismissed, that party shall inform the Court no later than July 15, 2024.  Otherwise, the case will be closed.

---

[2] Plaintiffs further argue that the basis for their claims—the exclusion of the fees from the initial price listing—occurred before they saw or assented to the arbitration agreement.  Doc. 13 at 9.  The Court finds this argument without merit.   Plaintiffs do not cite any case law in support of this argument, and, as discussed above, the claims derive from Go New York's service of selling tickets, and are thus within the agreement which Plaintiffs assented to.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 10.

It is SO ORDERED.

Dated:    July 1, 2024
            New York, New York

                                                EDGARDO RAMOS, U.S.D.J.