UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY TETA and MOTTY STEIN,
*individually and on behalf of all others similarly situated,*

      Plaintiffs,

– *against* –

GO NEW YORK TOURS, INC., d/b/a TOPVIEW SIGHTSEEING AND EVENT CRUISES NYC–CITY LIGHTS CRUISE,

      Defendant.

**OPINION & ORDER**

24-cv-01614 (ER)

RAMOS, D.J.:

  Cindy Teta and Motty Stein (collectively, "Plaintiffs") bring this class action on behalf of all similarly situated consumers against Go New York Tours, Inc., d/b/a Topview Sightseeing and Event Cruises NYC ("Go New York") for a violation of New York Arts & Cultural Affairs Law § 25.07. Before the Court is Plaintiffs' motion to certify an order for interlocutory appeal based on this Court's July 1, 2024 Order compelling arbitration between the parties. Doc. 24. For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

  Go New York is a New York City tour company that is incorporated in New York and maintains its principal place of business in New York, New York. ¶ 10.[1] Go New York sells, among other things, cruise tickets from its website, https://eventcruisenyc.com/events/city-lights-cruise-nyc. ¶¶ 1–2.

  Teta and Stein were purchasers of tickets for Go New York's sightseeing cruise. ¶¶ 7, 9. During the purchasing process, Plaintiffs allege that Go New York's website did

---

[1] Unless otherwise noted, citations to "¶ __" refer to the complaint, Doc. 1.

not disclose the additional fees that were to be added to the initially displayed ticket price before checkout. ¶¶ 9, 20, 21.

The process for purchasing a ticket for a Go New York tour on its website is as follows:

(1) select a cruise departure date, ¶ 18 (figure 1);

(2) select General or Premium admission, with corresponding prices for each option. ¶ 20 (figure 2). At this stage, the price of additional fees is not mentioned, however "+ fees" is included next to the price of the ticket, *id.*;

(3) once a ticket is selected, customers are prompted to input their name and email address. ¶ 21 (figure 3). The price at this stage still remains the same as in step 2 above, with the price of additional fees not disclosed, however "+fees" is included next to the price of the ticket, *id.*; and

(4) lastly, customers are taken to the order summary page. ¶ 22 (figure 4). Here, the total price is provided which includes additional fees, broken down into various categories ("marine," "ticketing & handling" and "fuel"). *Id.*

At the final checkout step, customers must agree to the terms and conditions of Go New York's website via a clickwrap agreement before they are able to purchase tickets. Doc. 11-1 at 2. The clickbox is next to a line of text that reads "I have read and agree to eventcruisenyc.com terms and conditions." *Id.* "Terms and conditions" is in light blue text with a hyperlink to the terms. *Id.* When customers click the hyperlink, the first paragraph of the terms and conditions includes a statement that Go New York's "terms and conditions contain a mandatory arbitration provision that requires the use of arbitration on an individual basis and limits the remedies available to you in the event of certain disputes." Doc. 11-2 at 2. The terms also include a section titled "Liability and Warranties Disclaimer" which states, among other things, as follows:

> You agree that any dispute, controversy or claim arising out of or in regards to this liability and warranties disclaimer shall be settled by binding arbitration in accordance with the laws of New York State, before a single arbitrator of the American Arbitration Association ("AAA"). The arbitration process including but not limited to payments, administration and fees will be conducted under the AAA regulations and rules.

> You and TopView agree that any dispute arising out of or related to these Terms and Conditions or the Services offered by TopView is personal to You and TopView and that such dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding

Doc. 11-3 at 8.

Teta and Stein filed suit individually and on behalf of all purchasers of tickets to City Lights Cruise on March 1, 2024, asserting that Go New York's website did not "disclose the total cost of the ticket . . . prior to the ticket being selected for purchase" and increased the ticket price "during the purchase process" in violation of the New York Arts and Cultural Affairs Law § 25.07.  Doc. 1 ¶ 3–4.  On May 10, 2024, Go New York moved to compel arbitration pursuant to the mandatory arbitration clause in their terms and conditions, and on July 1, 2024, this Court issued an order granting Go New York's motion to compel arbitration and instructed the parties to inform the Court no later than July 15, 2024 if they wished for the action to be stayed rather than dismissed.  Docs. 10, 15.  Subsequently, plaintiffs filed a letter with the Court indicating their intent to seek an interlocutory appeal and pursuant to approval from both parties, the Court stayed the case pending resolution of arbitration on June 23, 2024.  Docs. 18, 22, 23.  Plaintiffs filed the instant motion for leave to appeal the Court's July 1, 2024 order on August 13, 2024.  Doc. 24.  Specifically, Plaintiffs argue that an interlocutory appeal is appropriate because: (1) the issue of whether an arbitration clause governing a contract and its services also covers pre-marketing conduct is a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the litigation.  *Id.*

## II.   LEGAL STANDARD

A district court may certify an order for interlocutory appeal pursuant to Section 1292 of Title 28 of the United States Code when the court is "of the opinion that such order (i) involves a controlling question of law (ii) as to which there is substantial ground

3

for difference of opinion and (iii) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Certification of an interlocutory appeal may be granted in certain cases when appropriate to "avoid protracted and expensive litigation." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citing *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987)).

"It is a basic tenet of federal law," however, "to delay appellate review until a final judgment has been entered." *Pentacon BV v. Vanderhaegen*, No. 23 Civ. 2172 (KPF), 2024 WL 3835334, at *5 (S.D.N.Y. Aug. 15, 2024) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F. 3d 863, 865 (2d Cir. 1996)).  Thus, interlocutory appeals are "strongly disfavored in federal practice" and courts must exercise caution when departing from the final judgment rule.  *In re Adelphia Communications Corp.*, No. 07 Civ. 9999 (NRB), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008); *Wausau Business Insurance Company v. Turner Construction Company*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001).

The decision to certify a question for interlocutory appeal is trusted to the sound discretion of the district court, which may deny the appeal for other reasons "even where the three legislative criteria of [S]ection 1292(b) appear to be met." *Pentacon*, 2024 WL 3835334, at *5 (alteration in original) (quoting *Transport Workers Union of America, Local 100, AFL-CIO v. N.Y.C. Transit Authority,* 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005) (internal citations and quotations marks omitted)).  A district court's decision may be for "any reason, including docket congestion" and "the system-wide costs and benefits of allowing the appeal." *In re Facebook, Inc., IPO Securities & Derivative Litigation*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F. 2d 21, 24 (2d Cir. 1990)).  Moreover, "[t]he fact that district courts have the power to certify questions for interlocutory appeal in no way suggests that interlocutory appeals should be the norm." *Republic of Colombia v. Diageo North America Inc.*, 619 F. Supp. 2d 7, 10 (E.D.N.Y. 2007).  Indeed, the Second Circuit has held that although § 1292(b)

was designed as a means to make interlocutory appeals available, "it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F. 3d at 865.

### III.   DISCUSSION

   1. *The Order Does Not Involve a Controlling Question of Law*

Plaintiffs allege that the July 1, 2024 Order contains a controlling question of law pertaining to whether an arbitration clause governing a contract and its services also covers pre-agreement marketing conduct.  Doc. 24.  Go New York contends that the Order concerns a mixed question of law and fact, which should proceed to final judgment, before Plaintiff is granted an opportunity to appeal.  Doc. 25.  The Court agrees that granting certification pursuant to § 1292(b) would require consideration by the Second Circuit of a mixed question of law and fact.

To be a question of law, the question "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capital Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007)); *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (finding interlocutory appeal inappropriate without questions presenting issues of pure law).  A question of law is considered controlling if "(a) reversal of the district court's opinion could result in dismissal of the action, (b) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (c) the certified issue has precedential value for a large number of cases." *Bright v. Annucci*, No. 18 Civ. 11111 (NSR), 2023 WL 5803648, at *4 (S.D.N.Y. Sept. 6, 2023) (internal quotations omitted) (quoting *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)).

Here, the question that Plaintiffs present in their petition is whether an arbitration clause governing a contractual agreement and its services covers pre-marketing conduct.

5

Doc. 24.  To answer this question, it must first be determined whether the purchase of tickets from Go New York's website even constitutes pre-marketing conduct or if it would be classified as a "service" that the website offers.  This determination, as addressed in the July 1, 2024 Order, involves primarily a question of fact, which would warrant a thorough study of the record upon review by the appeals court.  Doc. 15; *see Capital Records*, 972 F. Supp. 2d at 551 (holding that to be a question of law, the court will not have to conduct a thorough review of the record).  Allowing an interlocutory appeal in this instance would "require the Second Circuit to review this Court's application of the law to the facts presented by the parties."  *In Re Facebook*, 986 F. Supp. 2d at 536 (quoting *Stone v. Patchett*, No. 08 Civ. 5171 (RPP), 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009)).  "Section 1292(b) is not . . . a mechanism 'for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.'"  *In Re Facebook,* 986 F. Supp. 2d at 536 (quoting *Monaghan v. SZS 33 Associates, L.P. 153 F.R.D.* 60, 64 (S.D.N.Y. 1994)).  Here, the question presented does not pose an issue of pure law and "mixed questions of law and fact are not appropriate for certification under § 1292(b)."  *Retirement Board of the Policemen's Annuity v. Bank of New York,* No. 11 Civ. 05459, 2016 WL 2744831, at *2 (S.D.N.Y. May 9, 2016) (quoting *Freeman v. National Broadcasting Co., Inc.*, No. 85 Civ. 3302 (LBS), 1993 WL 524858, at *2 (S.D.N.Y. Dec. 15, 1993)).

Even if the Court were to construe Plaintiffs' question as one of pure law, it is not controlling as to warrant interlocutory review.  A question of law is considered controlling when a "reversal of the district court's order would terminate the action."  *Pineiro v. Pension Benefit Guaranty Corp.*, 22 Fed. Appx. 47, 49 (2d Cir. Oct. 25, 2001) (quoting *Klinghoffer*, 921 F. 2d at 24).  Here, a reversal of the Order would not immediately terminate Plaintiffs' claim and availability for relief against Go New York.  The instant appeal simply seeks to determine the appropriate forum for the proceeding, either in this Court or through arbitration.  Plaintiffs are not seeking a final judgment on

6

the merits of the underlying claim. *See Pasha v. New York State Department of Health*, No. 22 Civ. 3355 (ER), 2024 WL 3730238, at *1 (S.D.N.Y. July 26, 2024). Following the Second Circuit's reasoning in *Pineiro*, regardless of how the appellate court resolves the issue, Plaintiffs would still have to prosecute their claim for violation of § 25.07 of the New York Arts & Cultural Affairs Law, although the venue in which they may resolve this claim may change. *Pineiro,* 22 Fed. Appx. at 49 ("No matter what we do on this appeal, it seems likely that this action will proceed."). Accordingly, the Court finds that Plaintiffs do not present a controlling question of law and fail to satisfy the first prong.

2. *The Court Finds That There is No Substantial Ground for Difference of Opinion*

Plaintiffs argue that there is substantial ground for difference of opinion as to whether the parties must arbitrate their pre-agreement marketing claims. Doc. 24 at 5. A "'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order." *In re Enron Corp.*, No. 01 Civ. 16034 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (quoting *In re Worldcom, Inc.*, No. M-47 (HB), 2003 WL 21498904 (June 30, 2003)). The substantial ground for difference of opinion prong is satisfied when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.,* 2007 WL 2780394, at *1. (quoting *In re Lloyd's American Trust Funds Litigation,* No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)). Additionally, a court must "analyze the strength of the arguments in opposition to the challenged ruling" when assessing this prong. *In re Facebook*, 986 F. Supp. 2d at 531.

Here, there is no substantial ground for difference of opinion that would allow for certification of appeal of the Order. Go New York's website presented to Plaintiffs a clickwrap agreement which required them to confirm that they "have read and agree to eventcruisenyc.com terms and conditions." Doc. 1 ¶ 22; Doc. 11-1 ¶¶ 4–5. Clearly,

Plaintiffs, along with all other potential purchasers, had notice of the arbitration provision because it was included in the first paragraph of the terms and conditions. Thus, the Court found that Plaintiffs were bound by the arbitration provision and that the provision applied to Plaintiffs' act of purchasing tickets. The Court relied on established legal principles that web users may be bound by clickwrap arbitration agreements when they have reasonable notice of the arbitration provision. *See, e.g., Starke v. Squaretrade, Inc.*, 913 F. 3d 279 (2d Cir. 2019).[2] Additionally, the strong federal policy favoring arbitration agreements also weighed in favor of the determination that the arbitration agreement covered the ticket sale as one of Go New York's services. *See BRM Trades, LLC v. All-Ways Forwarding Int'l, Inc.*, No. 21 Civ. 7151 (VB), 2022 WL 2788087, at *7 (S.D.N.Y. July 15, 2022) (noting that federal public policy favoring arbitration "requires [the Court] to construe arbitration clauses as broadly as possible") (quoting *In re American Exp. Financial Advisors Securities Litigation*, 672 F. 3d 113, 128 (2d Cir. 2011)).

Moreover, the Court's Order does not conflict with other decisions in this District and does not involve difficult legal issues.[3] And while it may be possible that the Second Circuit would reach a different conclusion, the Court does not see any substantial grounds

---

[2] Although the Second Circuit in *Starke* ultimately determined that the defendant's mandatory arbitration clause was invalid because when looking at the totality of the circumstances, the plaintiff was not on sufficient notice of the defendant's binding terms and conditions, they made clear in their opinion that the same principles of contract law apply to online transactions, including hyperlinked pages and clickwrap licensing, and that when a purchaser is "on inquiry notice of [certain contract terms] and assents to them through conduct," the purchaser is bound to the terms. *Starke*, 913 F. 3d at 289 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F. 3d 393, 404 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."); *Specht v. Netscape Communications Corp.*, 306 F. 3d 17, 31 (2d Cir. 2002) ("These principles apply equally to the emergent world of . . . hyperlinked pages [and] clickwrap licensing.")).

[3] The Court's Order cites many cases in which courts in the Circuit, this District and neighboring districts have found arbitration agreements agreed upon through clickwrap agreements to be enforceable. *Meyer v. Uber Technologies., Inc.*, 868 F. 3d 66, 77-81 (2d Cir. 2017) (noting, that a reasonably prudent digital user recognizes indicators of hyperlinked text and is on notice of the additional information to be found on the hyperlinked page); *see, e.g., Starke.*, 913 F. 3d at 292 (stating that a web user may be bound by a clickwrap arbitration agreement where they had "reasonable notice of the arbitration provision"); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (finding that almost every district court to consider the issue "has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable.").

for difference of opinion as to the enforcement of the arbitration clause. *In re Goldman Sachs Group, Inc. Securities. Litigation*, No. 10 Civ. 3461 (PAC), 2014 WL 5002090, at *3 (S.D.N.Y. Oct. 7, 2014) ("A mere disagreement or the possibility of a different outcome on appeal is not sufficient to show a substantial ground for difference of opinion."); *see also Salim Oleochemicals, Inc. v. M/V Shropshire*, 177 F. Supp. 2d 159, 162 (S.D.N.Y. 2001) (denying motion for interlocutory appeal because "[t]he issue presented was not difficult and of first impression, nor have plaintiffs pointed to a substantial split in Second Circuit district court rulings on the issue" (internal quotation marks and citations omitted)). Accordingly, there is no substantial ground for difference of opinion that would allow for certification.

3. *An Immediate Appeal of the Order Will Not Materially Advance the Ultimate Termination of Litigation*

An interlocutory appeal will be deemed to advance the ultimate termination of litigation if the "appeal promises to advance the time for trial or to shorten the time required for trial." *In re Facebook*, 986 F. Supp. 2d at 531 (quoting *Florio v. City of New York, N.Y.*, No. 06 Civ. 6473 (SAS), 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008)). This third factor, which primarily concerns judicial efficiency, is considered the most important of the § 1292(b) factors. *See SEC v. Gruss*, No. 11 Civ. 2420 (RWS), 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012).

Here, Plaintiffs assert that the Second Circuit's review would either result in arbitration compelled or not, rather than "further protracted litigation on the predicate question of arbitrability." Doc. 24 at 9. Plaintiffs argue that if the parties were not compelled to arbitrate, it would materially advance the ultimate termination of the case, since the arbitration provision precludes class arbitration and any mandatory arbitration would need to proceed on an individual basis. *Id.* Plaintiffs rely on *Islam v. Lyft, Inc.* as support in which the court granted the plaintiff's request for interlocutory appeal of the court's order to compel arbitration for a breach of contract claim between the rideshare

company, Lyft, and its drivers.  Doc. 24 at 9; *Islam v. Lyft, Inc.*, No. 20 Civ. 3004, 2021 WL 2651653 (S.D.N.Y. June 28, 2021).  The appeal, which was ultimately withdrawn through stipulation by the parties, was premised on the plaintiff's argument that the court "committed clear error by compelling arbitration under state law after finding the [Federal Arbitration Act] to be inapplicable, given the parties' 'express choice of law' for the FAA to apply to the arbitration provision." *Lyft*, 2021 WL 2651653, at *1 (internal citations omitted).  The district court in *Lyft* determined that an interlocutory appeal was appropriate and would advance the ultimate termination of the litigation since it would prevent the parties from the unnecessary burdens and expenses of arbitration and would allow the case to proceed to resolution in the district court.  *Id.* at *5.  The *Lyft* court also noted, however, that it is "mindful of the fact that an interlocutory appeal could also work to prolong the litigation, and that some courts have found that 'the mere possibility that a reversal of the Court's order would [advance the termination of the litigation] is insufficient to meet this third element' of Section 1292(b)."  *Id.*  (citing *Murray v. UBS Securities, LLC*, 2014 WL 1316472, at *7 (S.D.N.Y. Apr. 1, 2014); *In re Goldman Sachs*, 2014 WL 5002090, at *2)).

Additionally, *Lyft* is distinguishable because an interlocutory appeal in *Lyft* had the potential to provide precedential value to a wide number of cases.  2021 WL 2651653, at *5.  "The particular legal questions raised in Lyft's motion to compel arbitration [had been raised] frequently in district courts in [the] recent months, including in [the Second Circuit]."  *Id.* (citing *Haider v. Lyft, Inc.*, No. 20 Civ. 2997 (AJN), 2021 WL 1226442, at *2 (S.D.N.Y. Mar. 31, 2021); *Aleksanian v. Uber Technologies. Inc.*, No. 19 Civ. 10308 (ALC), 2021 WL 860127 (S.D.N.Y. Mar. 8, 2021)).  The court in *Lyft* determined that an interlocutory appeal would "conserve judicial resources in the longer term by resolving important and oft-arising legal questions."  2021 WL 2651653, at *5.  Further, Lyft had already taken an appeal from Judge Nathan's decision in *Haider v. Lyft*, which presented an identical legal question.  *Id.* at *6.  Thus, the court concluded that it

10

would be "appropriate and a preservation of judicial resources to consolidate the two cases on appeal." *Id.* Here, it is well settled law in the Circuit that arbitration provisions agreed upon through clickwrap agreements are enforceable and should be upheld.[4] Thus, an interlocutory appeal in this instance would not provide precedential authority for a large number of cases as it did in *Lyft*.

The plaintiff argues that the Second Circuit's review may avoid the need for mandatory arbitration to proceed on an individual basis, and if arbitration were not compelled, these Plaintiffs could proceed as a class action and defendant could similarly defend these claims all at once, suggesting this would lead to a faster resolution of the case. Adopting the court's position in *Murray v. UBS Securities* that an interlocutory appeal ultimately may delay the resolution of this action, "[p]laintiff's argument prevails only if this Court's decision is reversed; if the Second Circuit affirms the Court's decision, or rather yet, declines to hear Plaintiff's appeal, the result will be that this action will have been unnecessarily delayed by the interlocutory appeal. Moreover, it is safe to assume that the appeal process will take longer than the arbitration, thereby extending the time in which a final decision on the merits is rendered." *Murray*, 2014 WL 1316472, at *7 (citing *Owner-Operator Independent Drivers Association, Inc. v. Swift Transportation Co., Inc.*, No. 02 Civ. 1059 (PHX) (PGR), 2004 WL 5376210, at *1 (D. Ariz. July 28, 2004)). The Court concludes that certification is not guaranteed to speed up the progression of this case and rather may be the cause of further delays. Thus, Plaintiffs fail the third prong of § 1292(b).

Finally, "even when the elements of [S]ection 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *Garber v. Office of the Commissioner of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quoting *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162–63

---

[4] *Supra* footnote 3.

11

(E.D.N.Y. 1999)); *In re Facebook, Inc.*, 986 F. Supp. 2d at 530 (stating that a district court's decision may be for "any reason") (citation omitted)). The Court is cognizant of the precedent that only in exceptional circumstances an interlocutory appeal is granted. *See In re Ambac Fin. Group, Inc. Securities Litigation*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010); *Primavera*, 139 F. Supp. 2d at 570. Accordingly, as analyzed above, the Court concludes that this case does not present a set of facts that merits certification of an interlocutory appeal.

### IV.  CONCLUSION

For the foregoing reasons, Teta and Stein's motion for certification of interlocutory appeal is DENIED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated:   November 21, 2024
         New York, New York

                                                     _____
                                                     EDGARDO RAMOS, U.S.D.J.